UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
TROY YOUNG,

                     Petitioner,                    **21 Civ. 340**

     -v-

UNITED STATES OF AMERICA and
MDC BROOKLYN, HERIBERTO TELLEZ,
Warden,

                     Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## TROY YOUNG'S PETITION FOR WRIT
## OF HABEAS CORPUS UNDER 28 U.S.C. § 2241


                                      Michael K. Bachrach, Esq.
                                      224 West 30th Street, Suite 302
                                      New York, NY 10001
                                      Cell: (917) 304-5044
                                      Michael@MBachlaw.com

                                      Daniel S. Parker, Esq.
                                      Parker and Carmody, LLP
                                      850 Third Avenue, 14th Floor
                                      New York, NY 10022
                                      Cell: (917) 670-7622
                                      DParker@ParkerandCarmody.com

                                      *Attorneys for Petitioner Troy Young*

## PRELIMINARY STATEMENT

Troy Young, Petitioner, is a 26-year-old paraplegic, confined to a wheelchair, and has an inoperable thyroid gland such that he has severe issues regulating his body temperature. He was diagnosed with COVID-19 on the night of Thursday, January 14, 2021. He is already experiencing shortness of breath, extreme fatigue, chest pains, while having great difficulty regulating his body temperature.

We write requesting that the Court issue this Writ, granting Petitioner a 30-day furlough to Mr. Young pursuant to 18 U.S.C. § 3622.

We further request that the Court issue a Preliminary Injunction, restraining the Metropolitan Detention Center in Brooklyn from detaining Mr. Young for 30 days while this Writ application is pending.

## A BRIEF OVERVIEW

1. Mr. Young is currently incarcerated in the Metropolitan Detention Center ("MDC") Brooklyn where the scourge of COVID is raging. According to the BOP and MDC Warden Heriberto Tellez, as of January 19, 2021, 229 inmates have tested positive for COVID at MDC. *See* Letter addressed to the Hon. Roslynn R. Mauskopf, Chief Judge Eastern District of New York, dated, January 19, 2021 (attached hereto as, "Exhibit A").

2. Indeed, out of an inmate population of 1,130 inmates at the MDC, the BOP reports 229 inmates have tested positive, 49 inmates are currently in isolation after having tested positive, 92 staff members have tested positive, and 71 staff members have "recovered". *See* Exhibit A at 2 (Warden Tellez's letter does not list how many inmates have "recovered", nor does it explain whether any "recovered" staff or inmates suffer from continuing or permanent medical conditions

as a result of their prior infection); *see also* https://www.bop.gov/locations/institutions/bro (listing inmate population at MDC) (last visited January 20, 2021).

3. Notably, the reliability of the BOP statistics have been seriously questioned in multiple filings during the past year because, *inter alia*, the BOP's numbers do not "add up" and prosecutors have made representations to various Courts with conflicting numbers. *See, e.g.*, *United States v. Fernandez*, 12 Cr 844 (AJN) (SDNY September 30, 2020) (Dkt. No 465) (characterizing the BOP representations about COVID statistics at Ft. Dix as "gobbledygook" based on virtually simultaneous conflicting representations made on the BOP website and in Government filings in multiple cases opposing compassionate release for inmates at Ft. Dix).

4. To our knowledge, the BOP's general response when an inmate is diagnosed as COVID-positive is to isolate the inmate in his cell (possibly with another inmate) for at least 23 hours per day, hoping that the virus runs its course and the inmate recovers. Because Mr. Young is not an "average" inmate and because he already suffers from multiple, serious, medical conditions, and because he has already suffered from further medical problems while incarcerated,[1] and because he requires more attention than being left to recover on his own, judicial intervention is necessitated on an emergency basis.

5. Mr. Young comes to this Court, in the jurisdiction in which he is incarcerated, seeking emergency and immediate relief.

6. Mr. Young's continued incarceration places him at great risk of dying from the disease given his health background. He requires ongoing and significant care – more than being left alone in a cell and more than a daily temperature check – because his lack of a working thyroid

---

[1] Mr. Young previously suffered second degree burns to his leg when his leg, for which he has no sensation due to his paralysis, was scalded while using an MDC shower.

gland makes regulating his body temperature difficult and people with COVID often suffer a very high fever. In his case, this could prove fatal.

7. Since his incarceration at the MDC, Mr. Young has suffered from a multitude of health problems, some of which have resulted in emergency room visits and/or necessitated medical treatment at the MDC, including his having sustained second degree burns to his leg when he was scalded in a shower, multiple decubitis ulcers, and pitting edema as well as issues regulating his body temperature due to the prior destruction of his thyroid gland. He is also reliant on a catheter.[2]

8. Daily hygiene presents multiple challenges to Mr. Young. If he were granted a temporary furlough while he battles COVID, then it goes without saying that either family members or care-providers in a medical setting would be able to assist him.

9. Medical care and recuperative attention that could be provided to Mr. Young on a temporary basis in a less risky environment of home confinement or in a medical facility near to his family home in Newburg, New York, would not only save him from the substantially increased risk of suffering from further, possibly fatal, complications, but would also allow caring family members to assist him rather than leaving him shivering behind a locked cell door.

10. It would also reduce the prison's overcrowding and improve staff-to-inmate ratios. These are essential steps toward stemming the pandemic.

11. A writ should issue ordering an immediate 30-day furlough to Mr. Young to self-isolate in his family residence in Newburgh and/or a hospital near his family home.

---

[2] The Government is in possession of Mr. Young's medical records, but we will provide copies to the Court and any other party upon request.

## THE PARTIES

12. Petitioner Troy Young is a federal prisoner presently in the custody of the Bureau of Prisons at MDC Brooklyn under Register No. 79970-054.

13. Respondent Heriberto Tellez is the Warden of MDC Brooklyn, which is located within the Eastern District of New York, and is named in his official capacity.

## STATEMENT OF JURISDICTION

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioner's term in federal custody is being executed in a manner that violates the Constitution and laws of the United States.

15. The Court has subject matter jurisdiction over this Petition pursuant to Article I, § 9, c.2 of the U.S. Constitution (Suspension Clause); the Fifth and Eighth Amendments to the U.S. Constitution; 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (All Writs Act); and 28 U.S.C. § 2241 (habeas corpus). In addition, the Court has jurisdiction to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

16. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises out of the Constitution and laws of the United States and seeks corrective action by officers and employees of the United States in their official capacity.

17. Petitioner additionally invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(a)(4) because Petitioner seeks to redress deprivation of rights guaranteed by both the Constitution and federal statutes.

18. Venue is proper in the Eastern District of New York because Petitioner his housed within the MDC in this district. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) ("Whenever a

§ 2241 habeas petitioner seeks to challenge his physical custody within the United States, he should . . . file the petition in the district of confinements.").

## STATEMENT OF FACTS

19.     On November 14, 2019, Petitioner was sentenced by the Hon. Cathy Seibel, United States District Court Judge of the Southern District of New York, to a total term of imprisonment of 180 months; specifically 120 months for his conviction of one count of Racketeering Conspiracy in violation of 18 U.S.C. §1962(d), and 60 months for his conviction of Murder through the Use of a Firearm in connection with a crime of violence in violation of 18 U.S.C. §§ 924(j), 2; said sentences to run consecutively and thereafter followed by a period of supervised release of five years on each count to run concurrently on Indictment 17 Cr. 364 (CS) (SDNY).

20.     On February 12, 2017, when he was 22 years old, Troy Young was involved in a shootout between rival gangs at a party held in Newburgh, New York. Several people were shot during the incident, including Gevontay Owens Grant, who was killed, and Mr. Young, who was shot in the neck and paralyzed from the chest down for life.

21.     On May 17, 2019, before Magistrate Judge Paul E. Davison, Mr. Young pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement to Counts One and Eleven of the Fourth Superseding Indictment, racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and firearms murder in violation of 18 U.S.C. §§ 924(j), 2, respectively.

22.     On the date of his guilty plea, Mr. Young – who had been out on bond for over one year and living with his family in Newburgh – agreed to his bail being revoked after which he was remanded pending sentence.

23.     On September 12, 2019, Judge Seibel entered an order accepting Mr. Young's plea allocution.

24. Mr. Young is presently in BOP custody at MDC Brooklyn. Despite a request from counsel and a recommendation from the Court that he be designated to a Federal Medical Center, Mr. Young was designated to USP Coleman I (he has yet to be transferred there).[3]

25. His release date is calculated as November 26, 2031.

## TROY YOUNG'S PERSONAL BACKGROUND

26. Troy Young was born into a life where he was almost assuredly destined to a life of misery.

27. His mother was a drug addict and Troy was an at-risk child from birth – a "crack baby" as it used to be called. His father battered and abused Troy's mother, and went to prison for murder.

27. At age 8, Troy was administered an intelligence test to determine whether he was intellectually disabled and/or was in need of any special learning assistance and was found to have a full-scale IQ score of 75. Accordingly, he was diagnosed as functioning in the Borderline range of intelligence and his poor cognitive functioning contributed to a classification of Learning Disabled.

28. Because his mother was not capable of raising him and because his father was incarcerated, Troy was raised primarily by his great grandmother. He recalls that at one point, he lived in her home along with 15 other children as well as a physically disabled maternal uncle.

29. At age 13, after his great grandmother passed away, Troy was lured to the streets by local drug dealers and got involved in criminal conduct.

---

[3] A review of his MDC medical records revealed that the MDC medical staff had not received Mr. Young's medical records related to the February 12, 2017 shooting that left him paralyzed from the waist down and without a functioning thyroid for the rest of his life. There exist well over 1000 pages of medical records related to the shooting that were provided to the Probation Department prior to his sentencing. If the MDC never received those records that could inform why the BOP designated Mr. Young to a USP rather than a FMC, notwithstanding Judge Seibel's sentencing recommendation.

6

30. In 2008, he was placed in the juvenile justice system. He recalls being detained at one point at the Spofford Juvenile Detention, a notorious facility operated by the then Department of Juvenile Justice and now known to be a house of darkness and abuse.[4]

31. Troy's brother was murdered on March 4, 2009, in Newburgh, New York, when he was only 25 years old.

32. In late 2009, a few months after Troy's brother was killed, Troy was discharged from the juvenile system to his mother's home in Newburgh.

33. Returning to the negative environment from where he had come, he re-engaged with local drug dealers who were always present and ready to offer what seemed like the only means of survival available to him.

34. On February 12, 2017, Troy participated in the shootout that killed Gevontay Owens Grant and left Troy paralyzed from the chest down. The incident occurred not far from where his brother, Lamont, had been killed 8 years earlier.

35. The bullet severed his spine and the doctors were unable to remove it. Though Troy holds out hope to the contrary, doctors have informed him that he is not expected to ever be able to walk again.

36. In addition to paralysis, Troy's thyroid was completely obliterated by the gunshot wound. This has left him unable to regulate his internal body temperature. As a result, Troy swings from being extremely hot to extremely cold with no notice whatsoever. He is frequently sweating and shivering at the same time. In addition, he requires the use of a catheter and a daily enema in order to relieve himself. He is also at great risk for bed sores and infection when not receiving daily monitoring and consistent medical care.

---

[4]    *See* https://urbandemos.nyu.edu/2018/05/23/the-story-of-the-bronxs-spofford-juvenile-detention-center

7

37. In a summary of his medical condition attached to Mr. Young's sentencing memorandum (Exhibit B to Dkt. No. 471): David Jolly, MSW, DBA, Chief Operating Office of Cornerstone Family Healthcare wrote:

> Mr. Young is a paraplegic, an injury that was the result of a gunshot wound…. The psychological distress of his injuries is significant and will remain a challenge for Mr. Young for many years. These challenges will often have an effect on his health and well-being, and while we are not treating him for behavioral health, it is important to note that Mr. Young's overall health and future challenges will include not only physical challenges but psychological challenges as well. In regards to his physical health, Mr. Young will experience greater than average health-related problems as a result of his limited mobility, which may include deep pressure ulcers, deep vein thrombosis, and other pulmonary issues. For many patients with Mr. Young's injuries, blood clots are common and may result in additional complications. For all spinal cord injuries, the risk of infection is increased, including sepsis due to pneumonia and urinary tract infections. In many cases, the high risk of infection may result in additional medical complications. Mr. Young has been treated by Cornerstone for some of the issues identified above, including viral illness, second degree burns, neurogenic bladder and bowel, all of which are consistent with his injury.
>
> For many patients with Mr. Young's injuries, the necessary care required is extensive and will need to be provided throughout a lifetime. This care will not be limited to health and behavioral health; it will also need to include assistance with activities of daily living, such as food preparation, personal hygiene, and mobility in and around his living space.

38. On April 16, 2020, prior to contracting COVID-19, Mr. Young, through counsel, requested a furlough from Respondent out of concern for what could occur were Mr. Young to

become infected with COVID-19. *See* Exhibit B (annexed hereto). No response was ever received by counsel.

39. On January 15, 2021, Mr. Young, again through counsel, made a new request seeking for a furlough from Respondent after learning that Mr. Young had now been diagnosed positive for COVID-19. *See* Exhibit C (attached hereto). As of this writing, no response has been received.

40. Mr. Young is also pursuing another avenue of relief. Along with the filing of this application, in the Southern District of New York he is filing a motion pursuant to the compassionate release provision of the First Step Act ("FSA").

## STATEMENT OF LAW

41. Section 2241(c)(3) authorizes courts to grant habeas corpus relief where a person is "in custody in violation of the United States." The Second Circuit has "long interpreted § 2241 as applying to challenges to the execution of a federal sentence, including such matters as . . . prison conditions." *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008). This includes challenges to detention where conditions pose a threat to detainees' medical well-being. *See Roba v. United States*, 604 F.2d 215, 218-19 (2d Cir. 1979).

42. The Second Circuit's decision in *Roba* is instructive. In that case, the petitioner alleged that an imminent transfer from New York to face charges in California would create a substantial risk of death because of his precarious heart condition. The Second Circuit held that there was § 2241 jurisdiction to challenge his contemplated transfer, where such custody would threaten his life.

43. In this case, the unconstitutional threat to Petitioner's health and life posed by being held in Respondent's custody is ongoing and worsening conditions are likely imminent. Every

9

hour that Petitioner is held in the MDC he is subject to a significantly elevated risk of suffering further severe and possibly permanent complications as a result of his contracting COVID because of his medical conditions. The risk of dying from coronavirus is significant.

44.     Petitioner is excused from 28 U.S.C. § 2241's prudential exhaustion requirement. The statutory exhaustion requirement of Prison Litigation Reform Act does not apply to this action. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). In cases brought under 28 U.S.C. § 2241, courts may excuse failure to strictly comply with administrative procedures where good cause is found. Exhaustion can be excused when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft,* 329 F.3d 51, 62 (2d Cir. 2003).

45.     The only process ostensibly available to Petitioner is BOP's Administrative Remedy Program ("ARP"), a lengthy process that does not provide for immediate relief.

46.     As set forth in 18 U.S.C. § 3622, "The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to—

> **(a)**     visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of—
>
> > **(1)**     visiting a relative who is dying;
> > **(2)**     attending a funeral of a relative;
> > **(3)**     obtaining medical treatment not otherwise available;
> > **(4)**     contacting a prospective employer;
> > **(5)**     establishing or reestablishing family or community ties; or

10

  **(6)**  engaging in any other significant activity consistent with the public interest…"

  47.  Granting Mr. Young a furlough is permitted so that he can obtain medical treatment that is not available as well as for the purpose of "engaging in … significant activity consistent with the public interest."

  48.  In accordance with these subsections, the BOP is authorized by statute to release Mr. Young on an extendable, 30-day furlough. *See* 18 U.S.C. § 3622.

## STATEMENT OF REQUESTED RELIEF

Petitioner respectfully requests that this Court grant the writ of habeas corpus as "law and justice require" under 28 U.S.C. § 2243 and:

  a.  Issue a temporary restraining order for immediate transfer to home confinement and/or a hospital without delay for 30 days while this Writ application is pending; or, in the alternative,

  b.  Authorize discovery and set this matter for an expedited hearing on the merits while conditionally releasing the petitioner during litigation.

Dated: New York, New York
    January 21, 2021

                     Respectfully submitted,

                     /S/

                     _____
                     Michael K. Bachrach
                     Daniel S. Parker

                     *Attorneys for Petitioner Troy Young*