LAW OFFICE OF

# MICHAEL K. BACHRACH

224 WEST 30TH STREET, SUITE 302
NEW YORK, N.Y. 10001
\-\-\-\-\-\-\-\-\-\-\-\-\-
TEL. (212) 929-0592 • FAX. (866) 328-1630

MICHAEL K. BACHRACH *                                                                http://www.mbachlaw.com
* admitted in N.Y., MN and D.C.                                                      michael@mbachlaw.com

April 16, 2020

**By Email**

Warden Derek Edge
MDC Brooklyn
80 29th Street
Brooklyn, NY

*Re: Request for Furlough for*
*Troy Young (#79970-054)*

Dear Warden Edge:

      Please accept this request for a 30-day furlough pursuant to 18 U.S.C. § 3622 on behalf of inmate **Troy Young (#79970-054)**. Given the extraordinary and compelling circumstances of the ongoing coronavirus pandemic, Mr. Young has been able to file this request himself thus far. The furlough would allow Mr. Young to obtain medical treatment and engage in activity in the public interest. See 18 U.S.C. §§ 3622(a)(3), 3622(a)(6).

      The motivating reason for the request is that Mr. Young has multiple medical issues that place him at significantly greater risk of contracting and/or suffering acutely from COVID-19, according to the Centers for Disease Control.[1]

      On or about February 12, 2017, Mr. Young was shot in the neck. The bullet completely destroyed his thyroid gland and lodged into his spine. As a result of his injuries Mr. Young has no functioning thyroid gland and is paralyzed from the chest down. Without a working thyroid gland Mr. Young's breathing, heart rate, metabolism, body temperature, blood pressure, and immune systems are all compromised. Additionally, the paralysis leaves Mr. Young susceptible to bed sours and infection. All of this is documented in his sentencing submissions and formed the basis for the District Court's decision to recommend that he be designated to a Federal Medical Center, not the MDC or a USP, to serve his sentence. See Judgment, dated, November 20, 2019, at 3. Upon information and belief, all of this should also be documented in Mr. Young's BOP medical records.

      Despite his relative youth, Mr. Young's permanent injuries place him at high-risk should he be infected with COVID-19. Mr. Young's risk is heightened by the particular circumstances at MDC, which present an ideal and unfortunate situation for COVID-19 to spread. As of April 14, 2020, there were already five (5) inmates and fourteen (14) staff confirmed positive for COVID-

---

[1]    CDC guidance is available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fpeople-at-higher-risk.html

Warden Derek Edge
April 16, 2020
Page 2 of 2

19 at the MDC. Numerous other inmates are being monitored for COVID-19 as well. At the MDC, Mr. Young cannot practice regular hand hygiene and cannot effectively socially distance himself from other inmates as the CDC cautions every person in the United States to do in order to stop the spread of COVID-19.

A furlough is appropriate under both subsections (a)(3) and (a)(6). First, release is proper to facilitate availability of medical care and rehabilitation. See 18 U.S.C. § 3266(a)(3). Mr. Young can receive medical care and rehabilitative therapy on the outside that will not be available inside the MDC. Mr. Young, like all of us, is at risk of infection anywhere, but in the MDC where social distancing is impossible, the risk is acute, particularly for an inmate who cannot even shower without the assistance of others. Medical treatment, on the other hand, is limited within the MDC, even if the MDC remains fully staffed throughout this public health crisis. Outside of prison, however, Mr. Young is eligible Medicare coverage. He also can receive physical therapy from a cousin – with no criminal ties – who lives near him, has been trained to do so, and also works professionally as a personal trainer. Given Mr. Young's high-risk of contraction of COVID-19, releasing Mr. Young to shelter-in-place or, if he were to become sick to obtain medical care, is "consistent with the public interest."

To that end, releasing Mr. Young to quarantine at his mother's home in Newburgh, New York, would be a "significant activity consistent with the public interest." 18 U.S.C. § 3266(a)(6). It is not in the public's interest for an already compromised, vulnerable inmate, to die unnecessarily as a result of confinement before his remaining term of imprisonment on his 15-year sentence is complete. It is "significantly consistent with the public interest" to permit Mr. Young to live to serve out his sentence and be released from prison in the future.

Finally, there is reason to believe that Mr. Young "will honor the trust imposed upon him" as required for a furlough. Mr. Young was in full compliance with the terms of his bail for approximately 13 months – from April 19, 2018, when he was released on a $100,00 personal recognizance bond to home detention, until May 17, 2019, when he self-surrendered after pleading guilty pursuant to a plea agreement.

If released, Mr. Young would return to live with his mother, Angelette Young, at 45 Walsh Road, Newburgh, New York, 12550, which is where he resided when previously released on bond to home detention.

Please inform us of your decision on this request as soon as you can. Thank you for your consideration of this request.

Respectfully submitted,

Michael K. Bachrach
Daniel S. Parker
*Attorneys for Troy Young*